Submitted on record and briefs February 16, accused
reprimanded March 13, 1975

IN RE COMPLAINT AS TO THE CONDUCT OF
# HARRY D. BOIVIN, *Accused.*
533 P2d 171

C. S. Emmons, of Emmons, Kyle, Kropp & Kryger, Albany, filed the brief for petitioner.

No appearance contra.

PER CURIAM.

This is a disciplinary proceeding by the Oregon State Bar. The complaint alleges that the accused was an attorney and the owner of a building in Klamath Falls with several lessees, one of whom, Keith Rice, operated a restaurant under lease from the accused; that the accused undertook to form a corporation for J. E. Chambers, who desired to purchase the restaurant business, and then undertook to prepare a contract of sale of the restaurant from Rice to Chambers and a sublease and new lease between himself and Chambers and his corporation. It is, alleged that in doing so the accused undertook to represent not only Chambers and the corporation, but also Rice and himself, as the lessor, and that he "failed to advise Chambers of the conflict of interest between himself and Chambers and failed to advise Chambers to obtain independent counsel."[1]

A trial committee of the Oregon State Bar, after a hearing at which testimony was offered, found that the accused was guilty of this charge and that the conduct of the accused was "unethical and in vio-

---

[1] The complaint also includes other charges of which the trial committee found the accused not guilty and which we find to be unsupported by sufficient evidence.

lation of the standards of professional conduct established by law and by the Oregon State Bar." It recommended that the accused be administered a private reprimand.

■ We have reviewed the testimony and find that it supports the findings by the trial committee. We cannot, however, accept its recommendation of a private reprimand. Upon the filing of such a complaint by the Oregon State Bar against an attorney the matter then becomes a public record, including the final disposition of the case by this court. It follows that the disposition of such a case cannot be a private reprimand.

Upon examination of the record in this proceeding it appears that Chambers, who had never before been engaged in such a business transaction, came to the accused to form a corporation to protect him and his brother from personal liability in his new business venture. That corporation was organized by the accused, who then continued to represent it for some time.

It also appears that Mr. Chambers and Mr. Rice agreed upon the price and terms for payment for the purchase of the restaurant by Chambers and came to the accused to prepare the necessary papers and also because it was necessary to secure approval of the sale from the accused as the landlord. Mr. Chambers testified that it was suggested by the accused that he could "handle" the matter for both Mr. Rice and Mr. Chambers and that it would be cheaper for him to do so because he could then "split the fee" between them. Mr. Chambers also testified that the accused did not suggest at that time that he go to another lawyer.

The accused, when asked whether he suggested to Chambers that he should consult another lawyer, answered:

"I can't tell you. I don't know. The practice has been people would come in at times, we draw legal documents for one side, and the other side, they say, 'Can we take this to our attorney?' That is fine with us. In this particular instance this was what we considered an emergency. We went ahead here and did the work necessary to get the transaction closed. * * * We don't like to represent ordinarily tenants for obvious reasons, and we don't represent them ordinarily."

The accused then prepared a contract of sale for signature by Mr. Chambers both on behalf of the corporation and as an individual. Mr. Rice testified that he told Mr. Chambers that he would not be satisfied with a contract signed on behalf of the new corporation alone. Mr. Chambers testified, however, that he did not realize that he was signing as an individual and was surprised when he found out later that he was personally liable. The sublease from Rice to Chambers and the new lease from Boivin to Chambers were also prepared for signature by him as an individual, as well as on behalf of the corporation.

Subsequently the restaurant venture failed, after which the accused filed an FED proceeding and Rice filed suit to foreclose the contract of sale.

It is clear, as testified by the accused, that Mr. Chambers was fully aware of the fact that when the accused prepared the contract of sale and the sublease he was doing so on behalf of both Chambers and Rice and that the accused was the lessor, as the owner of the building. That, however, does not exonerate the accused.

Indeed, two problems remain: (1) Whether it was proper, despite that knowledge, for the accused to undertake to represent both Chambers and Rice in the preparation of the contract of sale and sublease, and (2) Whether it was proper, despite that knowledge, for the accused, as the owner of the building and lessor of the restaurant premises, to undertake to represent Mr. Chambers at all.

1. *It is improper for an attorney to represent both the buyer and the seller in the absence of express consent, after full disclosure.*

■ One of the fundamental canons of professional ethics is that it is improper for a lawyer to represent conflicting interests, except by express consent of all concerned given after a full disclosure of all of the facts.[②]

As stated in Drinker, Legal Ethics 104 (1953), with reference to Canon 6 of the Canons of Profes-

---

[②] Code of Professional Responsibility, Disciplinary Rule 5-105 provides as follows:

"Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proferred employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and *if each consents to the representation after full disclosure* of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"* * * * *" (Emphasis added)

sional Ethics of the American Bar Association (and superseded by the Code of Professional Responsibility, Disciplinary Rule 5-105, among others):

> "In observing the admonition of Canon 6 to avoid the representation of conflicting interests, the lawyer must have in mind not only the avoidance of a relation which will obviously and presently involve the duty to contend for one client what his duty to the other presently requires him to oppose, but also the probability or possibility that such a situation will develop. * * *"

It was recently stated by this court, although in a different context, that in order for consent to exonerate conduct by one in a fiduciary capacity that would otherwise be a breach of his fiduciary duties, such consent must be an "informed consent," after full disclosure of all of the material facts. See *Starr v. International Realty,* 271 Or 396, 533 P2d 165 (1975).

■ To satisfy the requirement of full disclosure by a lawyer before undertaking to represent two conflicting interests, it is not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both of them, but he must explain to them the nature of the conflict of interest in such detail so that they can understand the reasons why it may be desirable for each to have independent counsel, with undivided loyalty to the interests of each of them. See Wise, Legal Ethics 77 (2d ed 1970); Patterson and Cheatham, The Profession of Law 232, 235 (1971); Drinker, *supra* at 121; and Annot., 17 ALR3d 835, 838-39 (1968).

Indeed, it has been held that even such a full disclosure by a lawyer may not of itself afford complete exoneration. Thus, as stated in *Kelly v. Greason,*

23 NY2d 368, 296 NYS2d 937, 244 NE2d 456, 462 (1968):

"* * * [T]he unsophisticated client, relying upon the confidential relationship with his lawyer, may not be regarded as able to understand the ramifications of the conflict, however much explained to him * * *."

As also stated by Wise, *supra* at 258:

"The consent of both clients does not of itself accord complete exoneration. Even if obtained after full disclosure, the consent does not relieve the attorney of searching his conscience to discover any latent impropriety not readily perceptible to the consenting laymen."

and at 273:

"* * * 'No man can serve two masters.' If there is the slightest doubt as to whether or not the acceptance of professional employment will involve a conflict of interest between two clients or with a former client, or a conflict between the interests of any client and that of the attorney, or may require the use of information obtained through the service of another client, the employment should be refused."

See also Drinker, *supra* at 105, 120, and Annot., 17 ALR3d, *supra* at 841.

The representation by a lawyer of both the buyer and the seller in a business transaction is one of the clearest cases of the improper representation of conflicting interests. See Annot., 17 ALR3d, *supra* at 848. Numerous opinions by the Committee on Legal Ethics of the Oregon State Bar are to the same effect. See, among others, Opinions No. 102, 118, 135 and 162. As stated in another opinion by that committee (No. 73) involving a conflict of interest (although not involving the representation of a buyer and seller):

"In the practice of law, the concurrent repre-

sentation of adverse interests, like the plague, should be avoided. The most common reason for a practitioner's considering the concurrent representation of adverse interests is the economic saving to the parties involved. Many practitioners become involved in the concurrent representation of adverse interests, sincerely believing that they are accommodating the client and acting in his best interest. * * *

"* * * * *

"* * * [W]hile the representation of [a] client by [the] law firm at the moment may appear to be an accommodation, this accommodation may soon be forgotten. * * *"

As also stated by the Supreme Court of New Jersey in *In re Kamp*, 40 NJ 588, 194 A2d 236, 240 (1963), involving a lawyer who undertook to represent both the buyer and the seller in a real estate transaction:

"Full disclosure requires the attorney not only to inform the prospective client of the attorney's relationship to the seller, but also to explain in detail the pitfalls that may arise in the course of the transaction which would make it desirable that the buyer have independent counsel. The full significance of the representation of conflicting interests should be disclosed to the client so that he may make an intelligent decision before giving his consent. If the attorney cannot properly represent the buyer in all aspects of the transaction because of his relationship to the seller, full disclosure requires that he inform the buyer of the limited scope of his intended representation of the buyer's interests and point out the advantages of the buyer's retaining independent counsel. * * *"

■ In this case it may have been obvious to Mr. Chambers, as the purchaser of the restaurant business, that his interests were adverse to those of Mr.

Rice, the seller. As one unsophisticated in such matters, however, it does not appear that he understood the nature and extent of the potential conflict of interest arising from the possibility of future difficulties relating to the performance of the contract of sale, including the conflict that presented itself immediately in the preparation of provisions to be included in the contract of sale relating to the respective rights and remedies of the buyer and the seller.

Although both Mr. Chambers and Mr. Rice consented to the preparation of this contract by the accused, it does not appear from the record that there was any explanation by the accused to them of the nature of these problems or of the reasons why it might be desirable for each of them to have independent counsel, so as to satisfy the "full disclosure" requirement of DR 5-105(C).

Under these circumstances it was improper and unethical for the accused to undertake to represent both Mr. Chambers and Mr. Rice in this transaction.

2. *It is improper for a lawyer to represent a client in a business transaction with the lawyer.*

In this case the accused not only undertook to represent both the buyer and the seller in a business transaction, but also undertook to represent a client, for whom he had organized a corporation, in business transactions involving a sublease and a subsequent lease of property owned by the accused, with the result that he had a direct and personal interest in the transaction.[9]

---

[9] Code of Professional Responsibility, Disciplinary Rule 5-104 provides:

"Limiting Business Relations with a Client.

The conflict of interest in this transaction between the accused and his client, both existing and potential, was even greater than that resulting from the representation by the accused of both the buyer and the seller of the restaurant. Thus, the accused in this case had a direct and personal interest in this transaction which was completely inconsistent with his duty as a lawyer of undivided loyalty to protect the interests of Mr. Chambers as his client.

■ Again, it does not appear from the record in this case that there was any explanation by the accused to Mr. Chambers of the nature of this conflict of interest or of the reasons why it might be desirable for him to have independent counsel. Under these circumstances, it was highly improper and unethical for the accused to undertake to represent Mr. Chambers in this transaction.

In this case there was no evidence that the accused received any benefit or advantage beyond what he would have received had Mr. Chambers and Mr. Rice each been represented by independent counsel, other than the attorney fees paid by them, the reasonableness of which is not in question in this case. This, however, does not exonerate the accused.

There was no evidence in this case that Mr. Chambers was held personally liable under the provisions of the contract or lease or that he suffered any

---

"(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

"* * * * *"

See also Wise, Legal Ethics 74 (2d ed 1970). Cf. Schroeder v. Schaefer, 258 Or 444, 450, 477 P2d 720, 483 P2d 818 (1971).

loss or damage as a result of anything that the accused did or failed to do. We have disciplined lawyers who have borrowed money from clients without insisting that they obtain independent legal advice by suspensions from practice even though the client eventually suffered no loss. See *In re George C. Staples,* 259 Or 406, 410-11, 486 P2d 1281 (1971). Cf. *In re Neil Brown,* 262 Or 171, 179, 493 P2d 1376, 497 P2d 668 (1971). See also *In re Otto W. Heider,* 217 Or 134, 159, 341 P2d 1107 (1959). There was no evidence in this case, however, to impugn the complete good faith and honesty of the accused and his previous record is unblemished as a lawyer and as a good citizen.

For this reason, and under all of the circumstances of this case, we believe that this reprimand of the accused for his misconduct is sufficient.