Argued and submitted February 4,
accused suspended for thirty days March 4, 1981

# In re: Complaint as to the Conduct of:
## DONALD K. ROBERTSON,
### *Accused.*

## (No. 79-7, SC 27324)
624 P2d 603

Kevin P. O'Connell, Portland, argued the cause for the Accused. With him on the brief was O'Connell, Goyak & Ball, P.C., Portland.

Francis Harrington, Portland, argued the cause for the Oregon State Bar.

PER CURIAM.

**PER CURIAM.**

This is a disciplinary proceeding by the Oregon State Bar charging the Accused with both an improper conflict of interest and an "appearance of impropriety" in his handling of a land sale transaction in which the seller was either a client or former client and the purchaser, who paid the attorney fees for the transaction, was also a client. The answer of the Accused denied both the conflict of interest and appearance of impropriety.

The Trial Board found the Accused not guilty of the first cause of the complaint, which alleged an improper conflict of interest, but guilty of the second cause of the complaint, which alleged an "appearance of impropriety," and recommended a public reprimand. The Disciplinary Review Board concurred in those findings and conclusions and in that recommendation.

The Accused, in his brief to this court in which he "seeks review" of those findings, conclusions and recommendations, concedes that if it had been established by the facts that he had represented both sides in a real estate transaction there would have been an improper conflict of interest. He denies, however, that such a conflict of interest was proved. He also contends that the sole basis for the finding of impropriety or an appearance of impropriety "rests with the prior representation in 1974 of the complainants by the Accused" which "alone does not constitute a basis for disciplining an attorney," and that, in any event "under the facts of this case, there is no reasonable basis upon which it can be said that the complainants had a right to rely upon a belief that the Accused was also representing their interest in the transaction."

Canon 9 provides:

"A lawyer should avoid even the appearance of professional impropriety."

DR 9-101 provides:

"Avoiding Even the Appearance of Impropriety.

"(A) A lawyer shall not accept private employment in a matter upon the merits of which he has acted in a judicial capacity.

"(B) A lawyer shall not accept private employment in a *matter in which he had substantial responsibility while* he was a public employee.

"(C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official."

In *In re Ainsworth,* 289 Or 479, 493, 614 P2d 1127 (1980), we construed DR 9-101 as follows:

"In our opinion, the effect of this disciplinary rule is to define the more general terms of Canon 9 and to limit its application to the three specific situations described in DR 9-101(A), (B) and (C), none of which are applicable to the facts of this case. Indeed, the validity of Canon 9 as the basis of a complaint in a disciplinary proceeding might otherwise well be subject to question. *See Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980)."

*See also In re Houchin,* 290 Or 433, 438, 622 P2d 723 (1981).

■ It may be that DR 9-101 should be construed or amended to extend to conduct by an attorney which gives the appearance of violation of the terms of one of the other specific disciplinary rules, but no such contention is before us in this case. Because the charge of the appearance of impropriety in this case is not based upon one of the three specific situations described in DR 9-101(A), (B) and (C), we find the Accused not guilty of the second charge of the complaint. It does not follow, however, that the complaint against the Accused must be dismissed because both the Trial Board and the Disciplinary Review Board found the Accused to be guilty only of a violation of that rule.

■■ The Trial Board and the Disciplinary Review Board found that the Accused was not guilty of a conflict of interest. We are not bound by that finding, however, because we decide the facts based upon the record. Based upon our review of the record we find that there was an improper conflict of interest and that the Accused was guilty of violating DR 5-105, which provides as follows:

"Refusing to Accept or Continue Employment if the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in

behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"\* \* \* \* \*

"(C)   In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

The application of the provisions of DR 5-105 depends, of course, upon the facts of the particular case. According to the "Statement of Facts" in the brief of the Accused, the facts of this case are as follows:

"Donald K. Robertson has been licensed to practice law in Oregon since 1958. He has practiced in east Multnomah County and at the time in question was practicing in the Rockwood section of east Portland. The Accused was familiar with the complainants, Al and Rose Kuhlman, for a number of years. In June, 1974, the Accused represented the Kuhlmans in the preparation of an option agreement concerning the property involved in the questioned transaction. (Tr. 71). That option was not exercised and expired. Also, in June, 1974, the Accused represented the Kuhlmans by writing to the County Assessor in Elko County, Nevada, concerning a proposed assessment. (Tr. 68, 307). Both items of work occurred in June of 1974, and that appears to be the only representation performed by the Accused for the complainants.

"In August of 1976, the property owned by the Kuhlmans was sold on a subordinated unrecorded contract to a client of the Accused who was introduced by the Accused to the Kuhlmans. (Tr. 235, 236, 318, 319). However, between the representation in June of 1974 and the transaction of August, 1976, the Kuhlmans had entered into an exclusive listing agreement for the subject property, i.e. the property located at 197th and Burnside, Multnomah County, with J.J. Walker Real Estate Company. (Tr. 76). Furthermore, during that interim period, the Kuhlmans obtained a $25,000 loan for which they used the subject property as collateral. (Tr. 122 and 123). The Accused was not consulted by the complainants to either review, prepare or discuss either transaction. Although during the hiatus between June, 1974 and August, 1976, the Kuhlmans would occasionally see the Accused in the neighborhood, no further representation was involved.

"Richard Yaeger had been a client of Donald K. Robertson since 1974. (Tr. 233, 234, 309). Robertson was aware that the Kuhlmans wished to sell the subject property and informed Yaeger of that prospect. (Tr. 316). The Accused took Yaeger to the property to see it and subsequently introduced him to Kuhlmans. (Tr. 187, 235, 318-319). The Accused represented Yaeger and his corporation formed for the purpose of acquiring and developing the subject property, from August 7, 1976, through the culmination of the transaction. (Tr. 315). A disputed fact is the role played by the Accused in the negotiations between the parties. (Tr. 89, 192, 237, 238, 239, 240, 284, 322-323). The great weight of the evidence, supported by travel and billing records indicating the Accused was extremely busy at that time with other matters (Tr. 311-315), indicate little involvement in negotiating the agreement between the Kuhlmans and his client, Yaeger and Konar-West. The Accused did, however, draft the sales agreement and related documents on or about August 25, 1976. The Kuhlmans had been advised that the Accused was representing the purchaser, Yeager/Konar-West, and that they would pay the Accused's bill. (Tr. 283-284). Several months following the August, 1976 real estate transaction, the Accused did represent the Kuhlmans when a question arose as to whether a real estate commission was due J.J. Walker Real Estate Company on the sale of the subject property."

We note that no brief was filed by or on behalf of the Oregon State Bar which either disagreed with this "Statement of Facts" or which included a statement of any additional facts. Upon reviewing the record, however, we find that there were additional facts which, in our view, are material to a determination by this court of the questions presented for decision in this case.

First of all, the client, Mr. Lawrence Kuhlman, and his wife testified that he met the Accused in the "late 1960's" when he operated a repair shop in east Portland; that they then became friends; that on some occasions he charged the Accused for work on his automobile and boat, but on other occasions he did work for the Accused that he did not charge for; that on some occasions the Accused would do something for him and not bill him, and that "they swapped back and forth."

Mr. Kuhlman also testified that during those years he owned some property that he was trying to sell, beginning "in about [the] early 70s," and that in all previous attempts to sell the property the Accused was "involved" in either drawing up papers or reviewing someone else's papers. Specific instances of legal work by the Accused for Mr. Kuhlman relating to other matters, according to his recollection, included collecting a bad check, the purchase of some property in eastern Oregon, a transaction involving property in Nevada, and some "dealings" with a construction company.

Mr. Kuhlman also testified that when a listing for sale of the property expired in 1976, he told the Accused that "it was available" and that the Accused then said that he had a client who might be interested; that "he would get back to me," which he did, and that the Accused then said that he would "handle it" and that "there would be no commission and legal fees."

According to Mr. Kuhlman, the Accused then presented to him and his wife for signature the legal documents for sale of that property to a corporation; that these documents included a contract with a provision for a second mortgage in favor of the Kuhlmans which was not to be recorded for two years, and a deed to enable the purchasers to get a construction loan, which he thought would be held in escrow.

Mr. Kuhlman and Mrs. Kuhlman testified that the Accused did not tell them that the Accused was not acting as their attorney, but was acting solely as attorney for the purchaser, or that they should get independent advice from another attorney, and that they understood that the Accused was acting not only as their friend, but also as their attorney in that transaction, rather than solely as attorney for the purchaser.

Some time later, according to Mr. Kuhlman, he received a letter from an attorney representing the realtor with whom he had previously listed the property, demanding payment of a commission, and sent that letter to the Accused as his attorney, and that the Accused said that he would "take care of that."

Mr. Kuhlman also testified that about a year later he found out that another mortgage had been recorded "in front of (his) interests," which was contrary to his previous understanding. He then went to another attorney and later sent a letter of complaint to the Oregon State Bar.

Much of this testimony was denied by the Accused and its credibility is in dispute. In addition to their testimony, however, two attorneys testified that they represented the realtor with whom the Kuhlmans had previously listed their property for sale, and that after the completion of the sale of that property to the clients of the Accused they wrote the letter to the Kuhlmans demanding a commission for the sale on behalf of that realtor; that they then received a telephone call and a letter from the Accused; that the letter stated that "I have been the attorney for Mr. and Mrs. Kuhlman for about 15 or 16 years, and have, during that period of time, drawn any number of agreements providing for the sale of this property to others"; that he had "called this property to the attention of a client of mine"; that "because of my representation of Mr. and Mrs. Kuhlman over the years, I was completely familiar with the property," and that "under the circumstances (which were described in further detail in that letter) it would appear that the claim of your client is not meritorious." That letter was offered in evidence in these proceedings, but was not referred to in the "Statement of Facts" by the Accused.

These attorneys also testified that they attempted to pursue the matter further on behalf of their client, the realtor, and in the course of doing so attempted to take the deposition of the Accused, but that in a telephone conversation it was stated by the Accused that he would not allow his deposition to be taken because "he represented the Kuhlmans."

The Accused was questioned on cross-examination about that claim by attorneys for the realtor. He admitted writing the letter stating that he had represented the Kuhlmans for many years. He did not explain why he made those statements and testified that upon receiving the claim of the realtor for a commission he did not tell the Kuhlmans that he had not represented them in the transaction. He also testified that he had billed over $10,000 in

attorney fees to the corporation that he had organized as a "vehicle" to purchase the property on behalf of his new clients and that he would agree that the Kuhlmans were not "particularly sophisticated business people."

At the conclusion of the hearing before the Trial Board, the attorney for the Accused observed that the sales contract "smells," but contended that "not everything that smells is a violation"; that "the fact that [an attorney] commits to represent someone does not necessarily make you his lawyer for life," and that there was "no ethical obligation to tell them to get another attorney."

It may be that even if the attorney-client relationship between the Accused and Mr. and Mrs. Kuhlman had been terminated prior to the transaction, in which the Accused represented the purchaser of their property as the attorney for the purchaser, with the result that Mr. and Mrs. Kuhlman were then no more than *former* clients of the Accused at that time, his conduct would nevertheless have been improper in view of our interpretation of DR 5-105 in *In re Banks,* 283 Or 459, 584 P2d 284 (1978). Under the facts of this case, however, we find that at the time of the transaction involving the sale of Mr. and Mrs. Kuhlman's property they were still the clients of the Accused and that he was still undertaking to act as their attorney in that transaction.

As previously stated, Mr. and Mrs. Kuhlman testified that the Accused had acted as their attorney for several years in various matters, including previous attempts to sell this property; that in this transaction they understood that he was also acting as their attorney, as well as attorney for the purchaser, and that he did not inform them to the contrary. Although much of that testimony was denied by the Accused, he did not in his testimony undertake to explain either the statements in his subsequent letter to the effect that he had been their attorney for many years or his subsequent refusal to permit his deposition to be taken relating to that transaction upon the ground that he was then attorney for both Mr. and Mrs. Kuhlman and for the purchaser in that transaction, and that to testify on deposition would violate the attorney-client privilege.

On this record we conclude that those statements and that conduct by the Accused must be regarded as admissions by him that in the transaction for the sale of the property owned by Mr. and Mrs. Kuhlman he undertook to represent them as their attorney at the same time that he undertook to represent another client as the purchaser of the property.

We may agree with the contention by the Accused, quoting from Ethics Opinion 190, that "[o]nce created, the relationship of a lawyer and client does not continue in perpetuity" and that "[i]t is the perogative of either to terminate the relationship, although certain responsibilities continue to rest upon the lawyer after the termination." We may also agree with Ethics Opinion 190, which is again quoted by the Accused in his brief as follows:

> " 'The lawyer-client relationship is ordinarily not one which, at its inception, has any formalized statement of its terms, or the conditions under which it will continue. Frequently, if not usually, there is no express act or document which commences or terminates it. Inception, existence and termination of the relationship are often implied only from all of the facts.' "

*See also In re Galton,* 289 Or 565, 581, 615 P2d 317 (1980). We do not believe, however, that the termination of the attorney-client relationship between the Kuhlmans and the Accused can properly be implied from the facts of this case, particularly in view of the admissions by the Accused previously referred to.

With respect to the provisions of DR 5-105(C), as previously set forth, we also conclude from the testimony that it was not "obvious that he could adequately represent the interest of each" and that although the Kuhlmans apparently knew that the purchaser was also a client of the Accused they did not "consent to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each," as required by the provisions of DR 5-105(C) in situations in which an attorney undertakes to represent "multiple clients." *See also In re Porter,* 283 Or 517, 525, 584 P2d 744 (1978), quoting from *In re Boivin,* 271 Or 419, 424, 533 P2d 171 (1975).

Beginning in 1971 this court has on several occasions reprimanded attorneys for conduct involving improper conflicts of interest. *See, e.g., In re Hedrick,* 258 Or 70, 481 P2d 71 (1971); *In re Zafiratos,* 259 Or 276, 486 P2d 550 (1971); *In re Barrett,* 269 Or 264, 524 P2d 1208 (1974); *In re Boivin, supra; In re Banks, supra; In re Porter, supra;* and *In re Hershberger, supra.*

Based upon our review of the entire record in this case, including the admissions by the Accused by letter and conduct, we are unable to escape the conclusion that in undertaking to act as attorney in the transaction involving the sale of the Kuhlman property, the Accused had a conflict of interest which was so clear and flagrant that, in our opinion, a reprimand would not be appropriate. We hold that the appropriate discipline under the facts of this case is that the Accused be suspended from the practice of law as a member of the Oregon State Bar for a period of thirty days from the date of the entry of the mandate in this case. The Oregon State Bar is also awarded judgment against the Accused for costs incurred by it in this proceeding.

**TANZER, J.,** concurring.

I concur. I write separately because I believe the conduct of the accused to be sufficiently egregious as to warrant a suspension of longer duration than 30 days.

Campbell, J., joins in this opinion.