**CITY CONSUMER SERVICES, INC., Plaintiff,**

v.

**David G. HORNE, et al., Defendants.**

**Civ. A. No. C82–0235K.**

United States District Court, C.D. Utah.

Sept. 15, 1983.

Ronald V. Spratling, Jr., Salt Lake City, Utah, for Holladay Bank & Trust.

Lowell S. and Laverne Peterson, pro se.

David Young Payne, Salt Lake City, Utah, for Raymond Lambert.

Denton M. Hatch, Christensen, Jensen & Powell, Salt Lake City, Utah, for Bahrs.

Paul T. Moxley, Salt Lake City, Utah, for defendant Michael D. Wright.

Rodney G. Snow, Clyde, Pratt, Gibbs & Cahoon, Salt Lake City, Utah, for Cindy Mitchell.

Jack H. Molgard, Brigham City, Utah, for plaintiff Spickermans.

Rulon Burton, Salt Lake City, Utah, for William Perry.

Craig T. Vincent, Salt Lake City, Utah, for Melvin Lancaster.

Bennett P. Peterson, Bountiful, Utah, for DuWayne R. Swenson.

Dean H. Becker, Snow & Halliday, Salt Lake City, Utah, for Kenneth W. Kinzel.

William D. Marsh, Ogden, Utah, for Graham C. Shaw.

Ben Rawlings, Salt Lake City, Utah, for Brad Freckleton.

George A. Hunt, David W. Slaughter, Snow, Christensen & Martineau, William H. Henderson, Salt Lake City, Utah, for Beesley Music Co.

Carvel R. Shaffer, Bountiful, Utah, for defendants, Carvel R. Shaffer and David M. Pinney.

Royal K. Hunt, Salt Lake City, Utah, for Holladay Bank & Trust, David Pinney and Valerie Parker.

David B. Boyce, Backman, Clark & Marsh, Salt Lake City, Utah, for Home Savings & Loan and William Cox.

Gary E. Atkin, Salt Lake City, Utah, for BEC Development, Inc., A. George Kliney and Clark Brown.

Collin King, Giauque & Williams, Salt Lake City, Utah, for defendant Grant Affleck.

Stephen G. Stoker, Fox, Edwards & Gardner, Salt Lake City, Utah, for Janet J. Palmer.

Dwight L. King, Salt Lake City, Utah, for Draper Bank & Trust.

M. Byron Fisher, Fabian & Clendenin, Salt Lake City, Utah, for Associates Financial Services of Utah.

Stephen B. Mitchell, Burbidge, Mabey & Mitchell, Salt Lake City, Utah, for Pioneer Bank and Guardian State Bank.

John L. Young, Moffat, Welling & Paulsen, Salt Lake City, Utah, for Theodore Stanley.

Richard D. Burbidge, Burbidge, Mabey & Mitchell, Salt Lake City, Utah, for Frank & Juanita Hatch.

Michael Neider, Mortensen & Neider, Midvale, Utah, for Rod Goodman.

Randolph L. Dryer, Parsons, Behle & Latimer, Salt Lake City, Utah, for Frank K. Stuart, Trustee.

Duane A. Burnett, Bountiful, Utah, for defendants, Mary Jo Christensen and Sandy

Winklesky, Steve Olpin and Valerie Krista Parker.

Lester A. Perry, Salt Lake City, Utah, for Beehive Thrift & Loan and Robert M. Bridge.

James C. Swindler, Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, for defendant Sisam and plaintiffs Sisam and Armitage.

Mark C. McLachlan, David H. Schwobe, Turner, Perkins, Schwobe and McLachlan, Salt Lake City, Utah, for Keith M. Pearson.

Gary A. Weston, John K. Mangum, David Swope, Nielsen & Senior, Salt Lake City, Utah, for Abbott, Hornes, plaintiffs et al.

William W. Barrett, Marsden, Orton & Liljenquist, Salt Lake City, Utah, for BMW Auto Leasing, Inc.

Donald J. Purser, Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for Kenneth Taylor.

LeRoy S. Axland, Larry G. Reed, Suitter, Axland, Armstrong & Hanson, Salt Lake City, Utah, for Home Savings.

James D. Gordon II, Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, for Wells plaintiffs.

William T. Thurman Jr., McKay, Burton, Thurman & Condie, Salt Lake City, Utah, for George Klinell and Clark Brown.

Thomas A. Quinn, Kent M. Murdock, Ray, Quinney & Nebeker, Salt Lake City, Utah, for Home Savings & Loan and William H. Cox.

B. Ray Zoll, Zoll & Hall, Salt Lake City, Utah, for defendants Morrison & Middleton and Plaintiffs: Merrison, Stevenson, Ashton and Baer.

Mark O. VanWagoner, Lewis T. Stevens, Jeffrey L. Shields, Greene, Callister & Nebeker, Salt Lake City, Utah, for Zions First National Bank, Barclays American/Financial, Inc., Barclays-American Corporation, Lockhart Company, Steve Kramer, Richard L. Gray, Sue Birrell, and Robyn M. Brown.

Kent B. Linebaugh, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, Utah, for Foothill Thrift & Loan, Utah Firstbank, Harold E. Turley, Jr., Stanley R. Hoffman, Larry G. Grant, and Edward L. Burton, III as Trustee.

William G. Fowler, Robert D. Rose, Roe & Fowler, Salt Lake City, Utah, for debtors, Afco Enterprises, Inc., Afco Development Corp. and Afco Investment Corp.

Edward J. McDonough, D. Miles Holman, Janet C. Graham, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for West Beneficial Finance, Inc., Gregory Gunderson, Amy Provo, and David C. Anderson, as Trustee.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.*

Defendants, Utah Firstbank, Foothill Thrift & Loan, Turley, Hoffman, and Grant, have moved to disqualify plaintiffs' counsel and dismiss the complaint without prejudice. Defendants West Beneficial Finance Company, Gunderson, City Consumer Services, Inc., Snape, Leavitt, King, Andrade, Farmer, Haggerty, Allen, White, Home Savings & Loan, and Cox have joined the motion.

I held a hearing on this motion July 15, 1983 in Salt Lake City. At that time, I said I would write specific findings and conclusions in accordance with *Fullmer v. Harper*, 517 F.2d 20, 21 (10th Cir.1975). There, in a per curiam decision, the Tenth Circuit held that a verified motion to disqualify counsel "raises ethical questions that are conceivably of a serious nature," and an order denying disqualification is an appealable order within the meaning of 28 U.S.C. § 1291. In *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 66 L.Ed.2d 571, 101 S.Ct. 669 (1981) the Supreme Court reversed the holding that an order denying disqualification is immediately appealable under § 1291. Nevertheless, a record should be made in order to permit meaningful review after final judgment. 449 U.S. 368, 377, 101 S.Ct. 669, 675.

---

* of the District of Colorado, sitting by special designation.

The parties have submitted the motion upon affidavits, deposition testimony, and exhibits. The findings and conclusions here are prolusory. They involve the factual merits of the underlying suit and are therefore restricted to use only in the decision of this motion and, if need be, review by the appellate court. *Greenebaum-Mountain Mortgage Company v. Pioneer Title National Insurance Company,* 421 F.Supp. 1348, 1349 (D.Colo.1976).

This action arises from a massive investment plan that was promoted by Grant Affleck, his employees and representatives, in 1981, throughout the Salt Lake City area. Affleck was president of three corporate entities named Afco Enterprises, Afco Corporation, and Afco Investments. These companies were involved in varying degrees in the investment plan. Generally, the method used to invest in Afco required the interested investor to purchase a corporate promissory note from Afco. These promissory notes were offered to Utah residents through an offering circular dated April 2, 1981. To purchase the corporate promissory note, the investor was required to use his credit.

This personal credit was at the heart of the investment plan. Based on the accumulated equity in his primary residence, a typical investor was able to obtain a loan from one of the 16 lending institutions named as defendants in this suit. The loan was secured by a trust deed executed in favor of the lender. The proceeds were then turned over directly to one of the Afco companies, usually in the presence of Grant Affleck.

Afco promised its investors several benefits which made the investment plan seem irresistible. For example, it promised its investors that, for the use of their credit-worthiness, it would meet all the monthly installment payments that the investors owed to the lenders on their second mortgage notes. Further, Afco promised an annual ten per cent return on the total amount of the respective investments, time share intervals at Sherwood Hills Resort, use of a leased exotic automobile, individually tailored trust funds, and other benefits as well. Not surprisingly, Afco was not able to keep its promises to its investors and was forced to file for Chapter 11 reorganization in the United States Bankruptcy Court, Central Division, Utah, on March 8, 1982.

When the Afco companies filed for bankruptcy, hundreds of investors became directly liable on their respective promissory notes to the lenders, whose only apparent recourse was to foreclose on the outstanding notes. After the bankruptcy petitions were filed, two adversary proceedings were commenced against Afco, its principals and representatives on May 7, 1982. An amended complaint was filed May 11, 1982. The moving defendants here filed a motion in the bankruptcy court to disqualify plaintiffs' counsel on the basis of substantial conflicts of interest.

Judge Mai, bankruptcy court judge, denied without prejudice defendants' motion following a hearing held June 22, 1982, on the basis that evidence had not sufficiently developed to warrant disqualification. On July 2, 1982, Judge Mai dismissed the adversary actions on grounds of abstention and that the civil proceedings had an insufficient nexus to the Chapter 11 reorganization.

Plaintiffs then filed a complaint in this court against nearly all the defendants who were named in the bankruptcy proceedings, generally alleging causes of action identical to those raised in the adversary complaint in bankruptcy court. This motion to disqualify plaintiffs' counsel was filed June 16, 1983.

Since June, 1982, plaintiffs' counsel have been made aware of the bases upon which the moving parties rely for their motion to disqualify, through extrajudicial communications among the parties and through the record and pleadings. The primary basis for the motion is found in the characterization of some, but not all, of the plaintiffs. Of approximately 600 plaintiffs being represented by Nielson & Senior, 30 are individuals who, to varying degrees, participated in marketing the Afco investment package.

Carvel Shaffer, who held an executive's position with the Afco companies, Grant Affleck, Afco's president, and Norman Olsen, a consultant to Afco, met with Arthur Nielson and David Evans of the Nielson & Senior firm in late December 1981 and early January, 1982. Three such meetings occurred as a result, in part, of Olsen's efforts to clear up some of the serious financial complications Afco was experiencing at the time. Olsen was employed by a consulting firm, Norcey-Realcor. He had been contacted by Affleck in an attempt to reorganize Afco's major assets to avoid a loss to Afco's investors. Olsen's organization was to be paid on a percentage basis if it was successful in consummating a sale or reorganization. Olsen contacted two law firms before contacting Nielson & Senior, but those firms were unable to represent Affleck's companies due to conflicts of interest.

The result of the first two meetings produced nothing more than an expectancy on Affleck's part that Nielson & Senior could represent him or help with the almost insoluble task of restoring Afco's financial soundness. Each lasted a little more than an hour. The record affirmatively discloses that the parties actively discussed whether Nielson & Senior could represent Affleck and his companies. Meanwhile, Nielson & Senior had been attempting to resolve a conflict of interest problem involving a Dr. Fisher, who had made an investment with Afco and who was contemplating bringing suit against Affleck. Discussions between Nielson & Senior and Affleck stopped when the firm advised Affleck that it was unable to resolve Dr. Fisher's conflicts. This was the last contact with Affleck before this suit was filed.

Defendants advance five arguments in support of their motion to disqualify:

1. Nielson & Senior's simultaneous representation of multiple plaintiffs with actually different interests requires disqualification;

2. Nielson & Senior's former representation of Afco mandates disqualification;

3. Continuing representation of Union Bank mandates disqualification;

4. A compromise with defendant Brighton Bank emphasizes the disabling nature of the conflicts of interest; and

5. Disqualification will not hinder the efficient administration of justice.

Defendants rely on Utah's Revised Code of Professional Responsibility, adopted by this court in Rule 1(g) of the Local Rules of Practice, and therefore binding on all members of the federal bar. The relevant code sections for the purpose of this motion are Canon 4 ("A lawyer should preserve the confidences and secrets of a client"); Canon 5 ("A lawyer should exercise independent professional judgment on behalf of a client"); Canon 7 ("A lawyer should represent a client zealously within the bounds of the law"); and Canon 9 ("A lawyer should avoid even the appearance of professional impropriety").

Preliminarily, I note that it is helpful to bear in mind the nature of the professional responsibility which all lawyers are sworn to uphold upon their admission to the bar.

Ethical Consideration 1–1 of the Code of Professional Responsibility declares:

A basic tenet of the professional responsibility of lawyers is that every person in our society should have ready access to the independent professional services of a lawyer of integrity and competence. Maintaining the integrity and improving the competence of the bar to meet the highest standards is the ethical responsibility of every lawyer.

Within the Code of Professional Responsibility are contained canons, ethical considerations, and disciplinary rules. As stated in the Preamble and Preliminary Statement of the American Bar Association's Code:

The Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationship with the public, with the legal system, and with the legal profession. They embody the general aspects from which the Ethi-

cal Considerations and the Disciplinary Rules are derived.

The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations.

The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.

Mindful of these foregoing considerations, I will address the motion to disqualify.

## DISCUSSION

■ To disqualify a party's chosen attorney is a serious matter. "Where an attorney's conflict of interest undermines the court's confidence in the vigor of his representation of the client, the court may disqualify the attorney." *Field v. Freedman,* 527 F.Supp. 935, 940 (D.Kan.1981) (citing *Fund of Funds, Limited v. Arthur Andersen & Co.,* 567 F.2d 225 (2nd Cir.1977)). The burden in a motion to disqualify is on the moving party. 527 F.Supp. at 941. This court has an obvious duty to protect the integrity of the judicial process in the eyes of the public. The impact, however, upon "the public's respect for lawyers may be too speculative to justify overriding the client's right to take a calculated risk and, with full knowledge, engage the attorney of his choice." *Unified Sewerage Agency of Washington County, Oregon v. Jelco Incorporated,* 646 F.2d 1339, 1349–50 (9th Cir. 1981).

Movants' first argue that Nielson & Senior's simultaneous representation of multiple plaintiffs with actually differing interests mandates disqualification.

The principal disciplinary rule implicated here is DR5–105. It provides:

DR 5–105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the the exercise of his independent professional judgment on behalf of each.

Subsection (C) allows multiple representation only "if it is obvious that the lawyer can adequately represent the interest of each and each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his professional judgment on behalf of each." [1] Thus, two requirements must be satisfied in subsection (C) to allow Nielson & Senior's continued representation of multiple clients, in circumvention of (A) and (B). First, it must have been obvious to Nielson & Senior that it could adequately represent the interests of each client. The code does not define "obvious," and there is a dearth of case law on the subject. In *Unified Sewerage Agency, supra,* Judge Goodwin discussed the "troubling language" of DR5–105(C) in depth. 646 F.2d at 1346. Judge Goodwin disagreed with a 1978 Oregon case which said that

1. The phrase "multiple clients" is not defined in DR5–105(C), yet it is vitally important for understanding the scope of DR5–105(C) which allows exception to DR5–105(A) and (B). Ethical considerations 5–15, 5–16, 5–17, and 5–19 offer some guidance.

To read the language of DR5–105(C) literally, however, would make the representation of conflicting interests nearly impossible. The difficulty lies in the word 'obvious.' Once it is shown that the exercise of the lawyer's independent professional judgment would be or would likely be adversely affected (DR5–105(A)), how could it ever be 'obvious' that he could adequately represent the interest of each party?

In disagreeing with the Porter court's gloss on DR5–105(C), Judge Goodwin stated that "[W]ithout belaboring the point, we think 'obvious' must refer to an objective standard under which the ability of the attorney adequately to represent each client is free from substantial doubt." 646 F.2d at 1348 n. 12. I am persuaded that the applicable objective standard, in this case, for defining "obvious" is whether the lawyer possesses substantial doubt that he can adequately represent the interest of each client.

■ The second requirement in DR5–105(C) is that the client must consent to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each client. This requirement contemplates the lawyer representing possible differing interests.[2] The consent of the client after full disclosure of the possible effect of such multiple representation must be informed. *In re Boivin,* 271 Or. 419, 533 P.2d 171, 174 (1975). The *Boivin* court stated "[t]hat in order for consent to exonerate conduct by one in a fiduciary capacity that would otherwise be a breach of his fiduciary duties, such consent must be an "informed consent," after full disclosure of all of the material facts." *Id.* (citing *Starr v. International Realty, Limited,* 271 Or. 396, 533 P.2d 165 (1975)). The court went on to say:

To satisfy the requirement of full disclosure by a lawyer before undertaking to represent two conflicting interests, it is not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both of them, but he must explain to them the nature of the conflict of interest in such detail so that they can understand the reasons why it may be desirable for each to have independent counsel, with undivided loyalty to the interest of each of them.

533 P.2d at 174 (citations omitted).

Since the alleged participant plaintiffs are being simultaneously represented along with the non-participant plaintiffs by Nielson & Senior, defendants advance the following grounds for disqualification with respect to their first argument:

1. In Paragraphs seventeen through twenty-nine of plaintiffs' complaint, liability is sought to be imposed because of the existence of an alleged agency relationship between Afco and the lending institutions, violation of the securities laws, common law fraud and negligent misrepresentation;

2. Several plaintiffs participated in the same conduct which forms the basis of this lawsuit;

3. By virtue of Nielson & Senior's representation of the majority of the plaintiffs in this lawsuit, it has gained confidential information concerning the alleged participant plaintiffs' conduct in offering for sale and selling Afco investment packages;

4. Those plaintiffs who allegedly participated in marketing the Afco investment packages should be named as defendants;

5. The individual loyalty required of Nielson & Senior and owed to the alleged participant plaintiffs is diluted vis-a-vis those plaintiffs that did not participate. Hence, zealous representation is impaired as to both groups;

6. The confidences and secrets of the alleged participant plaintiffs cannot be safeguarded because the knowledge that Nielson & Senior has gained through the

---

2. The "differing interests" language is used in the American Bar Association's draft of DR5–105(A). Utah's Code of Professional Responsibility deletes this language. The ABA defines differing interests as follows: "Differing interests" include every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest."

attorney-client privilege could be used to enhance the interests of the non-participant plaintiffs.

The nub of the controversy is whether the interests of the plaintiffs represented by Nielson & Senior are sufficiently diverse and conflicting so as to impinge upon the judgment and loyalty of Nielson & Senior. If the interests are sufficiently different to require full disclosure by Nielson & Senior, I must determine if this has been accomplished. I must then determine if plaintiffs consented to representation after full disclosure of all the material facts.

Exhibit "B" in defendants' supporting affidavit of James R. Brown, counsel of record for Utah Firstbank, Foothill Thrift & Loan, Turley, Hoffman, and Grant, purports to represent a summary of bank records of Afco Investments Corporation. Account number 41–112048–2 was a checking account maintained at Commercial Security Bank during the period from June 1981 through March, 1982. The summary reveals the names of individuals to whom checks were issued on the commercial account for "commissions" or "finders fees." These individuals are named party plaintiffs. Thirty-four plaintiffs are shown on the summary.

Plaintiffs' counsel object to exhibit "B" on grounds of incompetency, and requests that it be stricken. The exhibit is not supported by the original cancelled checks or copies of the originals and, therefore, its accuracy cannot be determined. While I do not strike exhibit "B," nor find it "incompetent" I exclude it from my determination of this motion to disqualify.

### THE TEBBS DEPOSITION

Defendants also offer the deposition testimony of Jeffrey Tebbs, a named plaintiff. Tebbs testified that Affleck offered a five-percent referral commission on individuals who could be referred to the Afco investment program; that he was never an employee of Afco, but did receive compensation from Afco for his efforts in making presentations about the Afco program to potential investors; and that approximately $33,000 was paid to him in commission fees for getting others to invest in the program. Tebbs also testified he placed an investment with Afco. Almost immediately, he began to receive monthly notices from the lender that his loan was in arrears. After several such notices, Tebbs finally received notice of the bank's intent to foreclose on his home.

He also testified that he was an independent contractor with respect to his efforts at referring potential investors to Afco and made an effort to secure a license to sell securities, at Afco's prompting. Afco told Tebbs he had to be "legal" and a security license would be required. For this to happen, according to Tebbs, he would have to be on Afco's corporate staff. Tebbs left the details of the licensing for Afco to work out. Not long after, Tebbs discovered the problems Afco was experiencing and ceased his efforts in referring potential investors.

### THE JANSSEN DEPOSITION

In addition to the Tebbs deposition, Wayne Janssen's deposition is offered in support of defendants' motion. Janssen, a named plaintiff, testified that he, too, referred people to Afco and made sales presentations for Afco, and that he received compensation for his efforts. Janssen also knew he needed a license to sell securities and thought that he had obtained one from Afco, although this was not so, as he later discovered.

### ANSWERS TO DEFENDANTS' INTERROGATORIES

Defendants also rely upon various answers to defendants' interrogatories as propounded by City Consumer Services, Inc. These sets are offered as "representative" answers of the plaintiff class. They are marked exhibit "E." In each set, plaintiffs state that they were contacted by the alleged participant plaintiffs, apprised of the investment opportunities with Afco and subsequently invested with Afco. Jeff Tebbs, Wayne Janssen, and Wayne Bowcutt were implicated as the participant plaintiffs

who encouraged non-participant plaintiffs to place investments with Afco by sales pitches and presentations utilizing flip-charts.

### LINEBAUGH AFFIDAVITS

Defendants have also submitted the affidavits of Kent Linebaugh, Esq. Linebaugh is counsel of record for Foothill Thrift & Loan, Utah Firstbank, Harold E. Turley, Jr., Stanley R. Hoffman, and Larry E. Grant. Made a part of Linebaugh's affidavit is the deposition testimony of plaintiff John Emmet Valberg. He testified that other plaintiffs referred potential investors to him, that he paid them a finder's fee, and that he made sales presentations to the potential investors, some of whom subsequently invested money in Afco.

From the foregoing affidavits, exhibits, and deposition testimony in support of defendants' motion to disqualify, I find that some plaintiffs participated in encouraging other plaintiffs to invest in Afco. Those plaintiffs who encouraged others to invest received finder's fees or commissions for any successful referral to Afco. They also invested personally in Afco and suffered financial losses to the same extent that non-participant plaintiffs suffered.

I further find that the participant plaintiffs were not actual employees of Afco, but were individuals motivated by the financial opportunities available to them who were induced by Afco employees, representatives, and agents to sell the Afco program. The inducements were made with the promise of financial success. The participant plaintiffs were genuinely unaware of the precise nature of the operating procedures of Afco, of Afco's relationship with the defendant lending institutions, of the methodologies and strategies of Afco, and of the true financial posture of Afco at the time embraced by their participation. I further find that the primary interest of all plaintiffs, participant *vel non,* in this action is the cancellation of their respective loans with the various lending institutions.

### DEFENDANTS' COUNTERCLAIM

The moving defendants have counterclaimed against the plaintiffs who received commissions, alleging that their participation was a material part of the alleged Afco scheme; that, in the event judgment is rendered against the moving defendants, they should be entitled to contribution or indemnification from the participating plaintiffs; and that if all participant plaintiffs were engaged as each other's agents, joint and several liability could be imposed on each participant. From this, defendants argue that an impairing conflict of interest exists which mandates disqualification.

While I find that there were plaintiffs who participated in promoting the Afco investment package to other plaintiffs, I conclude that the counterclaims for contribution do not create an insurmountable barrier to Nielson & Senior's representation of the participant plaintiffs. The participant plaintiffs' exposure to liability on the contribution claim can only arise from a different set of operative facts which should be litigated, if at all, in an independent action. In *Brunyer v. Salt Lake County,* 551 P.2d 521, 522 (Utah 1976), the Supreme Court of Utah addressed this precise issue. It declared:

"We are not here concerned with the issues raised by the plaintiff against the defendants in the main action."

The court went on to state:

"The statute [78–27–39 U.C.A.] does in fact create a right of action where none existed prior to its adoption. A right of action should be distinguished from remedies. One precedes and gives rise to the other, but they are separate and distinct."

The contribution claim argument is not persuasive. I conclude that it cannot support defendants' assertion of an impairing conflict of interest within the plaintiff group. *Accord, de Haas v. Empire Petroleum Company,* 286 F.Supp. 809, 815–16 (D.Colo.1968), *aff'd in part, vacated in part on other grounds* 435 F.2d 1223 (10th Cir.1970).

### THE SECURITIES LAW VIOLATIONS

Plaintiffs seek to impose liability upon defendants, in part, by alleging viola-

tions of various securities laws, *viz.,* section 12(1) and 12(2) of the Securities Act of 1933, section 17(a) of the 1933 Act, section 10(b) of the Securities Exchange Act of 1934, Rule 10(b)(5), and the Utah Uniform Securities Act. Defendants argue that if they are found in violation of the securities laws, the participating plaintiffs could also be found in violation as well. Notwithstanding such possible exposure as a participant, however, an investor does not waive or lose the protection and shelter of the Securities Act of 1933 by participating in urging others so to invest. *Can-Am Petroleum Company v. Beck,* 331 F.2d 371, 373 (10th Cir.1964).

I conclude that this facet of defendants' argument is without merit.

### DISCLOSURE AND CONSENT REQUIREMENT, DR 5–105(C)

Giving consideration to the evidentiary material derived from the Tebbs, Janssen, and Valberg deposition excerpts, the Brown and Linebaugh affidavits, other interrogatories and objections thereto, and the remaining arguments advanced by defendants, I find that there is a potential for conflicting interests among the present plaintiff group represented by the Nielson & Senior law firm. I further find that Nielson & Senior is aware of the potential for conflict within the plaintiff group. Thus, I am satisfied that the first requirement of DR 5–105(C) has been met: Nielson & Senior has demonstrated a freedom from substantial doubt that it can adequately represent the interest of plaintiffs in this action. What I must now determine is whether the second requirement of DR 5–105(C) has been met, *viz.,* whether Nielson & Senior has fully disclosed to plaintiffs the possible effect of such multiple representation. If so, have the plaintiffs given Nielson & Senior informed consent to such representation?

At issue here is defendants' exhibit "D," attached to the Brown affidavit. This purports to be a newsletter which was sent to all plaintiffs advising them of the conflicts of interest problems with respect to multiple representation of the plaintiff group and the possibility that some plaintiffs may have causes of action against others. It also advises that a "Retainer and Referral Release Waiver" will be sent to all plaintiffs for their signatures so as to authorize multiple representation. The newsletter is dated March 10, 1982.

Defendants argue that the newsletter was sent to plaintiffs after the bankruptcy court heard the original motion to disqualify. On account of this, defendants contend, full disclosure was not given to the plaintiff group.

Nielson & Senior argue that before the original motion to disqualify, it made other written and oral disclosures to plaintiffs. Nielson & Senior has offered to provide me with more detailed information concerning the disclosures, for *in camera* inspection and review.[3] Nielson & Senior further state that all plaintiffs it represents have executed separate retainer agreements where the factors relating to the multiple representation of the plaintiff group are set forth and that plaintiffs have given their consent to representation after full disclosure of all the material facts.

I find that exhibit "D" is not persuasive evidence. Beyond the statement in James Brown's affidavit that he received it from one of the defendants, no other supporting documents or evidentiary papers have been submitted to support the contention that all plaintiffs received the newsletter or of the newsletter's origin. Accordingly, I do not consider exhibit "D" as evidence that the plaintiffs were not fully informed or that they did not give informed consent to Nielson & Senior's representation of them. The burden in a motion to disqualify is on the moving party. *Field v. Freedman, supra,* at 941. I conclude that defendants have not met their burden. Additionally, there is no evidence in the

---

**3.** I entertain serious doubts that *in camera* inspection can properly be regarded as a judicial function. *See Lorenz v. U.S. Nuclear Reg.*

*Comm.,* 516 F.Supp. 1151, 1153 (D.C.Colo. 1981).

present record that affirmatively shows that full disclosure of all the material facts was not communicated to members of the plaintiff group or that informed consent to representation was not given. Accordingly, defendants' first argument fails. I find that plaintiffs have given informed consent to Nielson & Senior after full disclosure and that the second requirement of DR5–105(C) has been met.

## FORMER REPRESENTATION OF AFCO

Defendants next contend that Nielson & Senior represented Affleck and the Afco corporations and should be disqualified from representing plaintiffs since plaintiffs named Affleck and Afco as defendants in the adversary proceedings in bankruptcy court, although Afco is not named as a defendant in this action. Offered as evidence of the alleged representation is the deposition testimony of Cindy Mitchell and Carvel Shaffer. Mitchell testified that a number of meetings occurred between Affleck and Nielson & Senior and that a retainer fee was paid by Norman Olsen to Nielson & Senior for legal representation. Defendants argue that an attorney-client relationship arose from those meetings and that Nielson & Senior gained Affleck's and Afco's confidences and secrets, which Nielson & Senior now has a duty not to divulge. Since plaintiffs seek to impose liability on the lenders by the alleged existence of an agency relationship between Afco and the lending institutions, defendants reason that the duty to preserve confidences and secrets of a client is the duty owed by Nielson & Senior to Afco and the named defendants. I must determine whether the relationship of attorney-client ever arose between Afco and Nielson & Senior.

■ I find this argument unpersuasive. As stated in my earlier findings, Norman Olsen attended those meetings with Affleck and Nielson & Senior. In Olsen's affidavit, he states that three such meetings occurred, each lasting a little more than an hour; that he did not give Nielson & Senior a retainer fee as Mitchell testified in her deposition; that the problem of conflicting in-

terests concerning a Dr. Fisher could not be resolved and Nielson & Senior determined that it could not represent Affleck or Afco.

I conclude that a relationship of attorney-client did not arise from the meetings between Affleck and Nielson & Senior. Further, even if it did, the evidentiary privilege based on confidentiality of communications between lawyer and client falls because no secrecy was involved in Affleck's disclosures to counsel. The presence of a third person defeats the attorney-client privilege. *See Doe v. A Corp.*, 330 F.Supp. 1352, 1355 (S.D.N.Y.1971). Olsen was not seeking representation from Nielson & Senior; he was a third party.

## CONTINUING REPRESENTATION OF UNION BANK

■ Union Bank is a lending institution in the Salt Lake City area. Nielson & Senior represents Union Bank in various activities including mortgage foreclosures. Defendants have asserted as an affirmative defense the failure to join Union Bank as an indispensible party defendant. Defendants intend to file a third-party complaint against Union Bank in the event this motion is denied and contend that other defendants would be entitled to a contribution claim against Union Bank should plaintiffs prevail. From this, defendants conclude that Nielson & Senior should be disqualified. Nielson & Senior resists this argument on the basis that it is not representing Union Bank in any Afco related matter, and would decline such representation if asked.

The record does not disclose a conflict here, either. I find this argument equally unpersuasive. First, the moving parties have not shown by specific tangible evidence that Nielson & Senior's continuing representation of Union Bank is in any way related to the present litigation so as to require disqualification. Second, if Union Bank became a defendant in this suit, defendants would still have to show that Nielson & Senior's former representation was so substantially related to this litigation. "[C]ourts have seen no need to fashion a

rule that prevents an attorney from ever representing an interest adverse to that of a former client." *Duncan v. Merrill Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1027–28 (5th Cir.1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

## THE COMPROMISE WITH BRIGHTON BANK

 Brighton Bank was named a defendant in this suit. Only two plaintiffs had involvement with it. After Nielson & Senior's analysis of the claims against Brighton, those plaintiffs decided to dismiss their claims.

Defendants contend that Brighton's dismissal diminishes the potential source of recovery for all plaintiffs, especially in view of plaintiffs' allegations that the lenders were joint venturers and that every plaintiff should be entitled to judgment against all the lending institutions, jointly and severally. Defendants conclude that Nielson & Senior cannot now act in fairness to all its clients. This fourth argument is without merit. That Brighton Bank was dismissed from this suit, after reaching an agreement with the two plaintiffs claiming against it, is not an indication of any impaired representation of other plaintiffs.

## THE EFFICIENT ADMINISTRATION OF JUSTICE

Finally, defendants argue that disqualification of Nielson & Senior will not hinder the efficient administration of justice. They urge the following grounds: (1) that it is unfathomable that plaintiffs could have confidence in Nielson & Senior in view of the conflicting interests among the plaintiff group; and (2) that those plaintiffs who borrowed from Utah Firstbank have respective average incomes sufficient to seek independent counsel.

This fifth argument is not persuasive. Defendants have failed to show any potential conflict among plaintiffs warranting disqualification. (See discussion relating to DR 5–105(C).) Moreover, I find that the respective net worth of some plaintiffs is not relevant to the disposition of this motion.

We must be wedded to practical considerations such as the efficiency and economy obtained by multiple representation while still maintaining devotion to aspirational principles such as the freedom of individuals to make reasoned selections of their own advocates. The key is to balance contending factors. In a case such as this with hundreds of parties and a profusion of facts, it appears to me that efficiency in managing the adjudicative process is correlative with reasonable grounds for selecting one particular firm to represent many claimants. The economy of such a selection by an individual plaintiff is obvious. I am satisfied that those making this decision are sufficiently advised. If they were not, this decision should fill in any lacunae that might remain.

From the foregoing findings of fact and conclusions of law, it is

ORDERED that defendants' motion to disqualify the law firm of Nielson & Senior is denied. It is further

ORDERED that defendants' motion to dismiss the complaint without prejudice is denied.