In re Complaint as to the conduct of
HENRY L. BAUER, *Accused.*
(No. 1209, SC 25447)
581 P2d 511

David C. Landis, Portland, argued the cause for accused. With him on the briefs were Jeffrey M. Batchelor, and Gearin, Cheney, Landis, Aebi & Kelley, Portland.

Frank H. Lagesen, Portland, argued the cause for the Oregon State Bar. With him on the brief were Barbara P. McFarland, Portland, and Cosgrave & Kester, Portland.

PER CURIAM.

**PER CURIAM.**

The Oregon State Bar brought this disciplinary proceeding charging the accused with three acts of unethical conduct. The charges arose from the accused's actions in the handling and closing of a real estate exchange transaction between Mr. and Mrs. Gilmore and Mr. and Mrs. Jones. Mr. Gilbert, a real estate agent, represented the Gilmores and Mr. Miller, a real estate agent, represented the Joneses. Gilbert and Miller entered into negotiations for an exchange of properties between their clients. Eventually, an agreement was reached and Miller prepared the real estate exchange agreement. The transaction was eventually closed in the accused's office. The closing statement was prepared by the accused. Prior to the closing of the transaction the accused had represented the Gilmores.

The specific improper conduct alleged was as follows: (1) that the accused acted as escrow agent in a real estate transaction between the Gilmores and the Joneses while acting as attorney for the Gilmores without disclosing his attorney-client relationship to the Joneses; (2) that the accused failed to render the escrow services "in a fair and impartial manner" to the detriment of the Joneses; and (3) that "subsequent to the closing of the transaction in which the accused purportedly served as an impartial escrow agent, the accused represented the Hagles in a dispute over the amount of the monthly payment which Mr. and Mrs. Jones were obligated to make to the Hagles and that he failed to disclose to the Joneses his attorney-client relationship with the Hagles," the original owners and vendors who sold on contract to the Edwards, who in turn assigned their vendee interest to the Gilmores.

The Trial Board of the Bar conducted a full hearing and issued an extensive memorandum opinion, findings of fact, and recommendation. The Trial Board found as follows on the three accusations: (1) "* * *

Upon weighing the inherent credibility of the witnesses and the matters to which they are testifying, we find that Bauer did indeed inform Mrs. Jones by telephone that he was representing Gilmore, and that at the time of the closing on July 31 he did advise them that they could have their own attorney examine the documents and could arrange for an independent escrow if they desired"; (2) "* * * We are convinced that Bauer did everything that he did in conviction of absolute fairness to all parties in the exercise of his experienced judgment. We furthermore accept, as a fact, that it was fair"; and (3) that the accused's attorney-client relationship with the Hagles was only an "awkward red herring."[1] The Hagles had no dealings with the Joneses until after the transaction here involved was closed. The Hagles were only vendors under the land sale contract to the Edwards, whose interest the Gilmores purchased and then assigned to the Joneses.

The Trial Board's recommendation was: "Recommend That File Be Closed With No Action."[2] The decision of the Disciplinary Review Board was as follows:

"The Disciplinary Review Board, in the form of a panel consisting of [Kenneth E. Shetterly], James O. Goodwin, Thomas Vaughan and John H. Kottkamp, having considered the above entitled disciplinary proceedings, concurs in the Trial Board Findings, Opinion and Recommendation."

Thereafter, the accused petitioned this court to "adopt the Decision of the Disciplinary Review Board

---

[1] Because the Gilmores assigned their land sale contract with the Hagles to the Joneses, the Joneses were obligated to make payments to the Hagles. The Trial Board stated, and we agree, that "[a]gainst the Joneses, the interests of Gilmore and [the original owners] were identical. We can conceive of no reason why [the accused] should have disclosed his relationship to the original vendor."

[2] ORS 9.525 provides that the Trial Board "shall file with the executive director written decision on the proceedings, recommending either the dismissal of the complaint or the disbarment, suspension or public reprimand of the attorney * * *." We assume that the Trial Board, by its action, meant to dismiss the complaint.

[ 58 ]

in so far as it concurs in the recommendation of the Trial Board that the matter be closed without reprimand." This case is unusual in that neither the accused nor the Oregon State Bar has any quarrel over the facts of the case or the disposition thereof. The brief of the Oregon State Bar states:

"Although this matter is subject to de novo review, the Oregon State Bar, does not intend to urge that the Trial Board or the Disciplinary Review Board erred in their respective findings. The Oregon State Bar acknowledges that the evidence was conflicting and subject to differing interpretations."

A complete review of all of the facts would require a narration of unreasonable length. Suffice to say, we have carefully examined all of the testimony and exhibits. Briefly, this situation arose when the Gilmores decided they wanted to dispose of their property which consisted of two buildings described as small apartments. This property was subject to the balance due on the Hagle-Edward-Gilmore contract to purchase. The Joneses owned six older houses, also subject to encumbrances. The Gilmore property was considerably more valuable and the Joneses wanted to "trade up." Both parties employed real estate agents, and these two agents, Gilbert for the Gilmores and Miller for the Joneses, worked out an exchange agreement which Miller prepared. The exchange agreement does not state a price and contemplates only an exchange with no resulting income taxes. The exchange agreement is drawn on a "Stevens-Ness" form and sets forth only the essentials as a working agreement with none of the terms, including how interest on the loans would be paid or how any reserve accounts would be credited or transferred. Therefore, there were no exact escrow instructions and, as might be expected, it left discretionary or judgment calls to be made by the accused in closing the matter between the two parties. There is a conflict of testimony between that proffered by the accused and that of Mrs. Jones, who was a former registered real estate agent. There were reserve accounts on both parties' contracts for the payment of

taxes and insurance. There was a question as to whether the Joneses should pay the amount of interest on the Gilmore contract, which they were required to pay, because they did not get into possession of the "apartments" as soon as they thought they would. It is clear from the evidence that the city required certain improvements and fire doors to be made to the apartments and this delayed the final closing.

The importance of this opinion is for the guidance of attorneys in closing real estate transactions. This court is aware that attorneys have historically closed real estate transactions in their offices or acted as an escrow of funds, deeds, contracts, and other matters pertaining to real estate dealings between parties. They have also prepared documents in connection with such transactions. This practice began when it was necessary for attorneys to examine abstracts of title to realty and render opinions on the validity of title. With the advent of title insurance companies and their writing of title insurance policies,[3] the title insurance companies also began to close real estate transactions and to act as escrow agents. There followed a proliferation of escrow companies. In 1963 the Oregon legislature found it necessary to adopt the "Oregon Escrow Law." ORS 696.505-696.585, licensing "escrow agents," ORS 696.511. ORS 696.505 provides:

"* * * * *.

"(2) 'Escrow' means any transaction wherein any written instrument, money, evidence of title to real or personal property or other thing of value is delivered to a person not otherwise having any right, title or interest therein for the purpose of effecting the sale, transfer, encumbrance or lease of real or personal property, to be held by that person until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by such person to a grantee,

[3] With the recent inflation in real property values, many purchasers of real property have title insurance policies that provide payment, in the event of defective or no title, for a fixed sum far less than the present value of their property.

[ 60 ]

grantor, promisee, promisor, obligee, obligor, bailee, bailor, or any agent or employe of any of them.

"(3) 'Escrow agent' means any person engaged in the business of receiving escrows for deposit or delivery for compensation.

"* * * * *."

As part of the Oregon Escrow Law, the legislature also adopted ORS 696.520, which provides:

"The provisions of ORS 696.505 to 696.585 do not apply to and the term 'escrow agent' does not include:

"(1) [Banks and financial institutions]

"(2) An attorney at law rendering services in the performance of his duties as attorney at law.

"* * * * *."

■ From the above, we conclude that an attorney may, under proper circumstances, continue to close real estate transactions between parties but to do so involves risks that he must guard against in his professional responsibility to his client and the public at large. The precautions that should be taken by an attorney under these circumstances are obvious.

Opinion No. 309 of the Oregon State Bar's Committee on Legal Ethics deals with the position of an attorney acting as an escrow agent in closing a sale on a business between a buyer and a seller where the broker handling the transaction selects the attorney from a number of attorneys that he knows are "acquainted with these kinds of transactions." It states:

"* * * * *.

"2. Insofar as an attorney can avoid preparation of substantive documents or the expression of the legal opinion, he can act as an independent escrow agent. Nothing herein should be construed to prohibit an attorney's closing a transaction in which he has been an attorney for one of the parties to the transaction."

Disciplinary Rule 7-104 of the Code of Professional Responsibility, adopted by this court pursuant to ORS 9.490, provides:

"(A) During the course of his representation of a client a lawyer shall not:

"* * * * *.

"(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client."

Here, the evidence shows the accused did not prepare the real estate exchange agreement. He did represent the Gilmores as an attorney. There is no evidence that he gave legal advice to the Joneses. The Trial Board found, and we agree with the finding:

"* * * Upon weighing the inherent credibility of the witnesses and the matters to which they are testifying, we find that Bauer did indeed inform Mrs. Jones by telephone that he was representing Gilmore, and that at the time of the closing on July 31 he did advise them that they could have their own attorney examine the documents and could arrange for an independent escrow if they desired."

There is also evidence by Gilbert that he informed Miller, the Joneses' real estate agent, that Bauer was Gilmore's attorney at the time the exchange agreement was executed and he recommended that Bauer act as the escrow agent. Mr. Miller could not recall that he was so informed, but the Trial Board concluded that Gilbert's testimony was the more trustworthy.

■ We have previously pointed out that when an attorney accepts employment under similar precarious conditions, his "disclosure" to the parties should be reduced to writing, fully stating the understanding with clients or other parties to the transaction. *See In re Brown,* 277 Or 121, 134, 559 P2d 884 (1977).

■ We adopt the findings, opinion and recommendations of the Trial Board and the decision of the Disciplinary Review Board, and the complaint against the accused is dismissed.

Complaint dismissed. Costs to neither party.