Submitted on plea of no contest March 15, accused suspended for 30 days July 6, 1983

# In re Complaint as to the Conduct of

## FRED C. JANS,
*Accused.*

## OSB No. 82-25, SC 29777)

666 P2d 830

/

.

## PER CURIAM

In the practice of law it is often difficult to serve one client. Here a lawyer attempted to serve multiple masters. A dissatisfied client and this proceeding are the results.

The Oregon State Bar and the lawyer, Fred C. Jans, have filed a no contest plea agreement pursuant to Rule of Procedure Relative to Admission, Discipline, Resignation and Reinstatement 37.1 that Jans be suspended from the practice of law for 30 days.[1] We approve the stipulation and order a 30-day suspension.

In 1978 Jans began to represent Karbowski. Later Jans went into business with Karbowski. They set up a corporation, 3D Electronics, Inc. (3D), to develop and manufacture metal detectors. Both owned stock, were corporate officers and were active in the management and operation of the company. Jans also served as the company attorney.

Between 1978 and 1981, Jans:

1. Acted as Karbowski's lawyer in a number of personal disputes Karbowski had with other persons and firms.

2. Acted as corporate counsel for 3D.

3. Prepared an employment agreement between 3D and Karbowski.

4. As lawyer for 3D, filed an action against Karbowski to enforce the employment agreement after Karbowski left 3D.

---

[1] Rule of Procedure 37.1 provides for disposition of a formal disciplinary complaint by a no contest plea, and reads in part as follows:

"Any formal disciplinary complaint may be disposed of by a no contest plea * * * entered into at any time after service of the formal complaint upon the accused.

"* * * * *.

"(e) The court shall review the plea or stipulation and the recommendation of the Disciplinary Review Board. If approved, the court shall enter an appropriate order, which order may, in the discretion of the court, fix the amount of the Bar's actual and necessary costs and disbursements incurred in the disciplinary proceeding to be paid by the accused. If the plea or stipulation is rejected by the court, the plea or stipulation may not be used as evidence of unprofessional conduct against the accused in the pending or any subsequent disciplinary proceedings.

"* * * * *."

When lawyers become actively involved in the ownership and management of small businesses with their clients, the business often looks to the lawyer for legal advice. In such cases, the business is a client of the lawyer. In addition, the lawyer invariably has himself or herself for a client; the lawyer relies upon the legal training and experience he or she has received to protect the lawyer's interest as a shareholder, director, officer, or owner of the business. In many cases, the lawyer ends up representing business associates as well.

Fortunately, most such business endeavors are terminated without a participant filing an ethics complaint with the Oregon State Bar. Such business relationships, however, often create a risk of ethical violations because of difficulties in separating the lawyer's self-interest from the business interest, in separating the interest of other participants in the enterprise from the lawyer's interest, and in separating the interests of the participants from each other.

DR 5-105 is directed to such situations. Subsection (A) concerns acceptance of employment; subsection (B) concerns withdrawal from employment; and subsection (C) concerns concurrent representation of more than one client in one matter. They provide:

"(A)   A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B)   A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C)   In the situations covered by DR 5-105(A), and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."[2]

---

[2]  *Cf.* DR 5-101(A), which provides:

"(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his

Although many ingredients go into the recipe for a successful lawyer-client relationship, one ingredient is indispensable: undivided loyalty. The relationship cannot properly exist absent the lawyer's uncompromised commitment to the the client's cause. DR 5-105 aims to insure undivided loyalty; in its absence, the lawyer cannot serve. The rule also seeks to maintain or increase public confidence in public institutions, for the appearance of impropriety that sometimes exists when a lawyer represents multiple clients, or represents one client against another client, erodes public confidence in the legal profession.

The complaint, which we take as true, alleges that "[b]etween March, 1978 and January, 1980, [Jans] assisted Karbowski on several personal legal matters * * *." It is also uncontroverted that Jans acted as 3D's corporate counsel during the same period and that he was acting for 3D in preparing and arranging for the execution of the employment agreement.[3] Although DR 5-105(A) would not necessarily prohibit Jans from representing Karbowski on some matters,[4] his

---

client will be or reasonably may be affected by his own financial, business, or personal interests."

*See also* DR 5-104(A):

"(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

No violation of DR 5-101(A) or 5-104(A) was alleged. *Cf. In re Drake,* 292 Or 704, 715-16, 642 P2d 296 (1982) (DR 5-104(A) violation).

[3] The complaint does not allege that Jans was representing both sides in the preparation and execution of the employment agreement. The complaint alleges:

"* * * * *.

"5. Between March, 1978 and January, 1980, Accused assisted Karbowski on several personal legal matters, including disputes Karbowski had with White Electronics, Al Smith Roofing, Empire Pacific Industries and Corvallis Drilling Company, Inc.

"6. From May, 1978 to and including all material dates specified herein, Accused acted as corporate counsel for 3-D.

"7. In January, 1981, accused undertook to institute a lawsuit for and on behalf of 3-D against Karbowski in United States Bankruptcy Court. The lawsuit claimed Karbowski had improperly taken property owned by 3-D and claimed that Karbowski had violated the employment contract Karbowski had entered into with 3-D.

"* * * * *."

[4] For example, in 1978 another firm asserted claims against Karbowski under an employment agreement and relating to a patent. Jans' concurrent representation of

participation in the preparation and execution of the employment agreement was unethical.

DR 5-105(A) prohibits a lawyer from undertaking employment if the exercise of independent professional judgment "in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment," unless permitted by DR 5-105(C) (discussed below). In most situations the DR 5-105(A) term "client" would have reference to a client in an existing lawyer-client relationship, a client upon whose behalf the future exercise of independent professional judgment might be adversely affected if the proffered employment in behalf of another person is undertaken. Conceivably, the term "client" could also refer to the client whose proffered employment is under consideration.

The reasons for DR 5-105 are threefold. First, the existence of the lawyer-client relationship between the lawyer and the "affected client"[5] makes difficult the exercise of independent professional judgment on behalf of the client whose representation is undertaken. Second, both clients normally have a confidence—unspoken, perhaps, but real, nonetheless—that "my lawyer will protect me, or at the very least, not take a position which might harm me."[6] Finally, although the existence of an "appearance of impropriety" is not, of itself, a basis for discipline, *In re Ainsworth,* 289 Or 479, 493, 614 P2d 1127 (1980), such conduct by a lawyer, if known to others, adversely affects public confidence in the legal profession.

The employment agreement between Karbowski and 3D included provisions which restricted Karbowski's rights, including patent rights. Even though 3D and Karbowski shared a general interest which was identical—the success of 3D— as to some aspects of the contract, their interests were adverse. Jans admits that he did not advise Karbowski to seek independent counsel, nor did Jans advise that a conflict existed.

---

Karbowski and 3D on such a claim would not necessarily violate DR 5-105, for in many such cases the corporation and the individual would have a complete unity of interest.

[5] The term "affected client" refers to the existing client whom the lawyer is not representing in the matter at hand.

[6] We realize that many people will say, "Mary Smith is *my lawyer,*" even though Mary Smith is not then handling any matter for the client. The statement in the text is to be considered in a context in which an ongoing lawyer-client relationship exists. *Compare In re Robertson,* 290 Or 639, 647, 624 P2d 603 (1981).

Nor was the conduct proper if the matter is viewed as one involving the concurrent representation, in one matter, of multiple clients. The exception of DR 5-105(C) allows representation of multiple clients if (a) "it is obvious that he can adequately represent the interest of each," and (b) "if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

Here, neither (a) nor (b) was satisfied. If anything was obvious, it was that Jans could not adequately represent the interest of either. It is never proper for a lawyer to represent clients with conflicting interests no matter how carefully and thoroughly the lawyer discloses the possible effect and obtains consent.[7]

---

[7] We are fully aware that this unyielding rule may raise concerns, particularly in smaller towns where two clients of the same lawyer, with conflicting interests, often request the lawyer to serve each of them regarding a transaction between them. There cannot be an exception for small towns. *Compare In re Montgomery,* 292 Or 796, 802-03, 643 P2d 338 (1982).

The key word in the footnoted sentence is "represent." This is not the occasion to determine whether a lawyer can avoid violating the rule by acting in other than a representational capacity. On this question, *see* American Bar Foundation, Annotated Code of Professional Responsibility 244 (1979), and Drinker, *Problems of Professional Ethics in Matrimonial Litigation,* 66 Harv L Rev 443-64 (1953).

This comment by Robert Aronson is germane:

"It is of the utmost importance that the attorney representing both parties to a transaction reflect upon the rationales behind conflict of interest proscriptions. It is not sufficient that the attorney believes himself able adequately to represent potentially differing interests, or even that all parties have consented. The possibility of subconsciously favoring the interests of either party, the appearance of impropriety that may arise from even the slightest dissatisfaction, the likelihood of receiving confidential information from one party that is damaging or helpful to the other, and the possibility that a court will subsequently disagree with the attorney's decision that he was able adequately to represent both interests—all dictate extreme caution in these situations.

"The temptation to represent potentially conflicting interests is particularly difficult to resist in family disputes. Often the attorney is the 'family lawyer' and has represented husband, wife, and even the children on previous occasions. Conflicts may arise, however, if the husband and wife seek a separation or divorce, including property settlement or custody agreements, or if one of the parents desires defense in a battered child action. The lawyer may see his role as counselor or negotiator for all concerned. At a minimum, the attorney must ensure that each understands the potential conflicts and their consequences, particularly the potential necessity for him to withdraw from representation of one or both and his inability to use confidences received from any of the parties in a subsequent suit between them. Even a seemingly amicable separation or divorce could later result in bitter litigation over property settlement or custody. If the parties have not clearly understood the lawyer's ethical responsibilities *ab initio,* the ensuing

■ ■     Even though there existed no lawyer-client relationship between Jans and Karbowski when the suit was filed, it was improper to represent 3D in bringing the suit. True, a lawyer may, under some circumstances, represent another client against the former client, even to the extent of suing the former client. But it is not proper to sue a former client relative to a transaction in which the lawyer represented the former client. *In re Hershberger,* 288 Or 559, 568, 606 P2d 623 (1980); *In re Mumford,* 285 Or 559, 562, 591 P2d 1377 (1979); *In re Banks,* 283 Or 459, 477-78, 584 P2d 284 (1978). Here, even though it is not clear whether Jans represented Karbowski relative to the preparation and execution of the employment agreement, in view of the ethical prohibition against Jans undertaking the preparation and execution of the contract initially, we have no hesitation in extending the prohibition to bringing suit against the former client on a matter that he was ethically prohibited from undertaking in the first place. The termination of the lawyer-client relationship did not lift Jans' disqualification.

    Fred C. Jans is suspended from the practice of law for a period of 30 days from the effective date of this decision. ORAP 11.03.

---

rancor may be directed toward him." (Footnotes omitted.) Aronson, *Conflict of Interest,* 52 Wash L Rev 807, 826-27 (1977).

*Compare In re Robertson,* 290 Or 639, 648, 624 P2d 603 (1981) (lawyer suspended for 30 days for representing buyer and seller in property transaction); *In re Bauer,* 283 Or 55, 61-62, 581 P2d 511 (1978) (lawyer acting as escrow agent not disciplined); *Beal v. Mars Larsen Ranch Corp., Inc.,* 99 Ida 662, 586 P2d 1378, 1384 (1978) (lawyer may act as a "scrivener"); *Matter of Chase,* 68 NJ 392, 346 A2d 89, 92 (1975) ("Representation * * * contemplates all the ways in which an attorney can or does act for others, whether in matters of law, business or otherwise"); and *Blevin v. Mayfield,* 189 Cal App 2d 649, 652, 11 Cal Rptr 882 (1961) (only service performed by lawyer "was that of a scrivener").