Argued and submitted April 3, dismissed May 22, 1984

In re Complaint as to the Conduct of
DAVID S. SHANNON,
*Accused.*
(OSB 82-141; SC S30291)
681 P2d 794

Dana R. Taylor, Portland, argued the cause and filed the briefs for the Oregon State Bar.

Thomas E. Cooney, Portland, argued the cause for the accused. On the briefs were David S. Shannon and Shannon, Johnson & Kromer, P.C., Portland.

170

## PER CURIAM

This is a disciplinary proceeding brought by the Oregon State Bar charging the accused with violating Disciplinary Rule 5-105 of the Code of Professional Responsibility. The charge arose from the accused's representation of two men in actions brought against them jointly. The Trial Board, after a hearing at which testimony was offered, found that the accused was not guilty of unethical conduct in these matters and recommended the accused be exonerated of the charges. The Disciplinary Review Board agreed with the Trial Board. The case now comes before this court on the petition of the Oregon State Bar to reject the findings, decisions and recommendations of the Trial Board and the Disciplinary Review Board.

In 1978, the accused's law firm undertook the defense of Gerald Smith (Smith) and Victor King (King) in two actions[1] filed by the same attorney. In one, the Hankins were plaintiffs and, in the other, the Engles were plaintiffs. Smith and King and their closely held corporations were defendants in both cases.

Smith had advanced training in economics and had completed one year of law school. Since 1960, he and King had worked together intermittently in various endeavors. In the past, the accused's firm had performed legal services for them in their separate and joint matters. Smith and King had a history of privately resolving differences that arose between the two of them.

In 1977, Smith decided he wanted to sell his janitorial business and move to Alaska. He sold the business to King and, as a part of that transaction, King entered into a hold harmless agreement[2] with Smith so that Smith would have no responsibility or liability. The Hankins and Engle cases arose out of Smith's sale of the janitorial business to King. The cases were brought against King, the owner of the business, and Smith. After those cases were filed, the accused, Smith and King held a telephone conversation and discussed the

---

[1] Another lawyer was assigned to the cases, but the accused retained supervisory responsibility.

[2] The accused was not involved in the negotiation or drafting of the agreement but knew the agreement existed.

representation by the accused of Smith and King. During that conversation, the accused advised King and Smith that, if at any point a conflict or problem developed between them, he could not participate. The parties each understood this. The accused also suggested to Smith that he might want to retain his own lawyer.

As the cases progressed, King assumed full responsibility for defending the cases and paid the legal fees associated therewith. Up until 1980, there was no reason to believe that King would not perform the hold harmless agreement.

Early in 1980, King became financially unable to pay the expense of defending the Hankins and Engle suits, thus exposing Smith to liability. Because King's inability to pay would affect the respective financial interests of Smith and King, the accused's firm resigned from both cases. Subsequent to the withdrawal, Smith met with the accused, reviewed and obtained his file.

Smith consulted with another attorney, Stanley Sharp.[3] Sharp wrote a letter to Smith in which Sharp reviewed and gave his opinion concerning the representation of Smith by the accused's firm. Sharp also prepared a memorandum which discussed the conflict of interest and this memorandum was given to Smith.

A meeting was held at the accused's office. Smith, King, Sharp, the accused and the lawyer in the accused's firm who had been handling the Hankins and Engle cases, Mr. Johnson, were present. At this meeting, "conflict of interest" was discussed. Smith stated he wanted the Hankins and Engle cases settled, that he would pay the amount necessary to settle the cases, and he understood King would repay him when King was able. Smith rehired the accused to settle the Hankins and Engle cases brought against King and himself. The cases were subsequently settled and dismissed.

The charge against the accused is that both in undertaking to represent both men initially and then, after resigning, again representing both men, the accused had a conflict of interest in violation of Disciplinary Rule 5-105, which provides in relevant part:

---

[3] Sharp had been a partner in accused's firm but left in 1978.

"(A)   A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B)   A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C)   In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

■   DR 5-105(C) allows for the representation of multiple clients if it is obvious that the interest of each client would be adequately represented and if each client consents to the representation after full disclosure. This provision permits clients to make informed decisions before accepting the risk that their attorney may have to withdraw at a later date.

■   At the time the accused agreed to represent both Smith and King, the accused was aware of the hold harmless agreement and knew that at some future date a possible conflict of interest might arise. The accused advised Smith and King that if a conflict arose he would have to remove himself from the case. The accused also suggested to Smith that he should hire his own attorney. The parties understood the ramifications of the accused's representation in the event a conflict of interest arose. The accused did not violate DR 5-105 when he represented Smith and King for the first time in the Hankins and Engle cases.

■   The Bar also charges the accused with violating DR 5-105 when the accused, after resigning, agreed to represent Smith and King in settling the Hankins and Engle cases. When the accused agreed to represent Smith and King again, he was informed that Smith and King had worked out any differences between themselves, as they had on previous occasions. Because any conflict of interest was resolved, the accused could represent the interests of each client adequately. Furthermore, Smith had consulted independent

counsel for an assessment of his situation vis-a-vis King. Both parties were fully informed as to the possible effect of the accused's representation. The accused did not violate DR 5-105 when he agreed to again represent Smith and King.

**4.** An attorney should never represent in litigation multiple clients with conflicting interests. *In re Jans,* 295 Or 289, 295, 666 P2d 830 (1983); *In re Porter,* 283 Or 517, 584 P2d 744 (1978). There are, however, circumstances in which an attorney may represent in litigation multiple clients with *potentially* differing interests. DR 5-105(C) sets out when a lawyer may represent multiple clients. A lawyer may represent multiple clients "if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure." *See, In re Holmes,* 290 Or 173, 179-81, 619 P2d 1284 (1980). In this case, the accused complied with the provisions of DR 5-105(C): The parties' interests were adequately represented and the parties consented after they were fully informed of the possible effect of the accused's representation. Therefore, the accused's conduct was not unethical.

The charges against the accused are dismissed. Costs awarded to the accused.