Argued and submitted September 6, suspension ordered October 2, 1984

In re Complaint as to the Conduct of

## PETER E. BAER,
*Accused.*

(OSB 82-38; SC S30593)

688 P2d 1324

Garth S. Ledwidge, Gresham, argued the cause and filed the briefs for the accused.

Gregory R. Mowe, Portland, argued the cause for the Oregon State Bar. With him on the brief was Leslie K. Bonney, Portland.

PER CURIAM

## PER CURIAM

The Oregon State Bar instituted disciplinary proceedings against the accused, Peter E. Baer, charging him with violations of the disciplinary rules in his dealings with Mr. and Mrs. Larry G. Peterson. A hearing was held before the Trial Board and the accused was found guilty of violating Disciplinary Rules 5-101(A) (refusing employment when the interests of the lawyer may impair his independent professional judgment); 5-104(A) (limiting business relations with a client); and 5-105(A)-(C) (refusing to accept or continue employment if the interest of another client may impair the independent professional judgment of the lawyer). The Trial Board recommended that the accused receive a public reprimand and be required to take and pass the legal ethics examination required of new admittees. The Disciplinary Review Board concurred in the findings but disagreed as to sanctions. The Disciplinary Review Board recommended that the accused be suspended for 30 days and be required to take and pass the legal ethics examination.

We find that in September, 1980, Mr. and Mrs. Larry G. Peterson owned a home in Boring, Oregon. Mrs. Peter Baer, the then wife of the accused, visited the Peterson residence and became interested in purchasing the property. Mrs. Baer returned to the home with the accused to inspect it and Mrs. Baer again expressed her desire to purchase the property. Within a few days, the Petersons and the Baers commenced negotiations for the sale of the house. The accused suggested to the Petersons that by letting him do the legal work necessary to close the transaction they would save several thousand dollars. The original sales price was $62,500. This price was lowered to $59,500 to reflect the savings in legal costs. The accused participated fully in negotiating the sales price and terms, and in other discussions relating to the property transaction. The accused did not disclose that he was representing only his wife's interests, but instead merely told the Petersons they could have another attorney check his work if they chose to do so. He did not clarify the need for independent legal advice nor did he inform the Petersons he was not representing them. The Petersons believed the accused was representing all parties to the transaction.

Thereupon, the Petersons accepted Mrs. Baer's offer

to purchase the house with the understanding that the accused would perform all the legal services necessary to close the transaction. The Petersons asked questions about the legal aspects of the transaction and the accused answered their questions. He also offered them tax advice pertaining to the sale. Pursuant to the understanding of the parties, the accused prepared an earnest money agreement, an amended earnest money agreement, an addendum to the amended earnest money agreement, a warranty deed and escrow instructions.

The accused acted as escrow agent in closing the sale of the property. Mrs. Peterson questioned whether it was appropriate for Mr. Baer to handle the escrow and questioned him as to the legal rights of the Petersons in the event the transaction was not handled correctly. The accused responded that the Petersons could look to his malpractice insurance.

Pursuant to the amended earnest money agreement, Mrs. Baer was to make a down payment at closing, assume the Petersons' mortgage, and pay the remaining balance of approximately $29,500 no later than April 2, 1981. Upon payment of the $29,500, Mrs. Baer was to receive a warranty deed previously signed by the Petersons and left in escrow with the accused. The Petersons asked the accused what would happen if the final payment was not made. The accused told them that they would get their house back and would keep the money. As it turned out, accused's wife was unable to sell her former residence and thus was not able to make the final $29,500 payment. The Petersons attempted to repossess the house but were advised by the accused that the agreement was not a contract of sale as the Petersons thought, but rather was a simple earnest money agreement. The accused further advised the Petersons that the accused's wife now held a part ownership interest in the house and if the Petersons wanted the house back they would have to sell it and refund the accused's wife her money.

In April, 1981, the Petersons hired an attorney to protect their interests. The Petersons' counsel reviewed the matter and wrote accused advising him that he had "a severe conflict of interest" and suggested the accused settle the matter immediately. The accused responded by filing suit on behalf of his wife in both state and federal court for rescission of the purchase agreement, alleging fraud on the part of the

Petersons due to certain defects in the house. Suit was filed in both courts because the Petersons were then living in England and the accused apparently was uncertain as to which court had jurisdiction.

The accused was charged with violating DR 5-101(A) and DR 5-104(A).

DR 5-101(A) provides:

> "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

DR 5-104(A) provides:

> "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

The accused argues that the Trial Board and the Disciplinary Review Board erred in finding him guilty of violating DR 5-101(A) and DR 5-104(A) because his only client was his wife—he did not accept employment from the Petersons nor did he enter into a business transaction with them. We disagree. The accused suggested and the Petersons agreed that he perform the legal work necessary to close the real estate transaction. He prepared the documents associated with the sale of the property. The price of the home was reduced by approximately $3,000 to reflect the savings of attorney fees to the Petersons. Due to his wife's participation in the transaction, the accused's interests differed with the Petersons' and his professional judgment reasonably might have been affected by his own financial, business and personal concerns. Although the accused told the Petersons they could have another attorney check his work, this falls short of the full disclosure requirement:

> " 'To satisfy the requirement of full disclosure by a lawyer before undertaking to represent two conflicting interests, it is not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both of them, but *he must explain to them the nature of the conflict of interest in such detail so that they can understand the reasons why it*

*may be desirable for each to have independent counsel,* with undivided loyalty to the interests of each of them. See Wise, Legal Ethics 77 (2d ed 1970); Patterson and Cheatham, The Profession of Law 232, 235 (1971); Drinker, supra at 121 [Legal Ethics (1953)]; and Annot., 17 ALR3d 835, 838-39 (1968).' (Emphasis added)." (Footnote omitted.) *In re Porter,* 283 Or 517 525, 584 P2d 744 (1978), quoting *In re Boivin,* 271 Or 419, 424, 533 P2d 171 (1975). *See also In re Holmes,* 290 Or 173, 179-80, 619 P2d 1284 (1980).

We find the accused guilty of violating DR 5-101(A) and DR 5-104(A).

The accused was also charged with violating DR 5-105 for his representation of the Petersons and his wife in the real estate transaction and for filing suit against the Petersons. DR 5-105 provides in pertinent part:

"(A)   A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B)   A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C)   In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

In *In re Porter, supra,* 283 Or at 523, we said:

"* * * [I]f the representation of multiple clients is such that the lawyer's independent professional judgment on behalf of one client *will be* adversely affected (an 'actual' conflict), or *is likely to be* adversely affected (a 'potential' conflict), the representation is improper unless the exception provided in DR 5-105(C) applies." (Original emphasis.)

A conflict of interest existed when the accused undertook the representation of both sides in the real estate transaction. *See, In re Jans,* 295 Or 289, 666 P2d 830 (1983); *In re Hershberger,* 288 Or 559, 606 P2d 623 (1980). The requirement of DR

5-105(C) for full disclosure was not met by the accused. We find the accused violated DR 5-105.

Finally, the accused was charged with violating DR 2-103(A) and DR 2-104(A), which provide:

"DR 2-103 Recommendation of Professional Employment.

"(A)  A lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client, except that he may pay the usual and reasonable fees or dues charged by any of the organizations listed in DR 2-103(C)."

"DR 2-104 Suggestion of Need of Legal Services.

"(A)  Subject to the restrictions of Paragraph (B), a lawyer may initiate personal contact with a prospective client for the purpose of obtaining professional employment only in the following circumstances:

"(1)  If the prospective client is a close friend, relative, former client or one whom the lawyer reasonably believes to be a client;

"(2)  Under the auspices of a public or charitable legal services organization; or

"(3)  Under the auspices of a bona fide political, social, civic, fraternal, employee or trade organization whose purposes include but are not limited to providing or recommending legal services, if the legal services are related to the principal purposes of the organization."

The Trial Board and the Disciplinary Review Board found the accused not guilty of violating these disciplinary rules and we agree. It was not proven by clear and convincing evidence that the accused solicited the legal work from the Petersons.

We find the accused violated DR 5-101(A), DR 5-104(A) and DR 5-105. The accused is suspended from the practice of law for not less than 60 days beginning on November 1, 1984, and thereafter until he has taken and successfully completed the professional responsibility examination. *See* BR 6.1(a)(iv). The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).